N. J. Dept. Labor—Lenorth v. Linden Contracting Co.

NEW JERSEY DEPARTMENT OF LABOR.
WORKMEN'S COMPENSATION BUREAU.

MARY LENORTH, ADMINISTRATRIX AD PROSEQUENDUM OF THE ESTATE OF MICHAEL KRUTULIS, PETITIONER, v. LINDEN CONTRACTING COMPANY, RESPONDENT.

**Driver of Trucking Team Thrown From Truck Through the Jolting Caused by the Uneven Road—Death Resulting—Evidence Examined at Length—Compensation Fixed.**

On determination of facts and rule for judgment.

For the petitioner, *William N. Becker.*

For the respondent, *McCarter & English* and *Gerald M. F. McLaughlin.*

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

I do find and determine from the evidence taken in this cause as follows, to wit:

1. That Michael Krutulis, deceased, was, on the 10th day of December, 1923, in the employ of the respondent, Linden Contracting Company, in the capacity of driver of a two-horse-drawn material wagon, which employment was subject to the compensation section of chapter 95, laws of New Jersey, 1911, and supplements thereto.

2. That, on the above-mentioned date, Michael Krutulis met with an accident arising out of, and in the course of, said employment, resulting in his death, leaving surviving him a wife and son.

.3. That the respondent herein had knowledge of said accident within the time prescribed by law.

4. That, at the time of the accident, the said Michael Krutulis received wages in said employment amounting to the sum of twenty-four ($24) dollars for a full week.

5. That no compensation was paid to the petitioner by way of compensation on account of the death arising out of said accident.

6. That the petitioner had expended money for burial of Michael Krutulis made necessary on account of the death resulting from the accident.

7. That Mary Lenorth, a niece of the deceased, made application for, and received from the surrogate of the county of Union, letters of administration *ad prosequendum,* to prosecute an alleged claim of the widow and next of kin of Michael Krutulis, late of the city of Linden, New Jersey, who died intestate December 10th, 1923, against the Linden Contracting Company, of 450 Wood avenue, Linden, New Jersey, or any other person or persons or corporation, whose wrongful act, neglect or default caused the death of the said Michael Krutulis.

8. That the widow, Antanina Krutulis, and son, Joseph Krutulis, next of kin, of Michael Krutulis, reside in Alytaus, Lithuania, filed with the surrogate of the county of Union letters of renunciation of the estate of Michael Kru-

tulis, who died intestate, and being entitled to have administration of the effects of said deceased, renounced said right of administration, and requested the appointment of Mary Lenorth, who, in pursuance thereof, is prosecuting this action.

9. That the son, Joseph Krutulis, at the time of the death of his father, was above the age of sixteen years, and under the act cannot be considered a dependent, and is therefore not entitled to any benefits thereunder.

10. From the testimony of Mary Lenorth, she stated that the deceased left home on December 10th, 1923, for his work with the Linden Contracting Company, and that some time later she saw his dead body at the morgue in Elizabeth, and also, when the body was brought home by the undertaker, that she paid for the funeral and burial expenses out of the funds of the estate, and that she gathered his personal belongings together and sent them to his dependents in Europe.

11. From the testimony of Julius Lopach, he stated that on the morning of December 10th, 1923, while he was looking out of a window of his home on Pratt Place, Linden, New Jersey, he saw a wagon drawn by two horses turn in from Washington avenue into Elm street, and as the wagon approached a point on Elm street, between Washington avenue and Maple avenue, he noticed "that the wagon went up and down, due to the bad condition of the road, and that the front wheels of the wagon fell and sank into a big ditch around eighteen inches deep, that had been dug a couple of weeks before, and which had since sunk in, causing the driver to pitch sideways from his seat and fall to the ground, causing the horses to run away for a distance of a number of blocks uncontrollable, and that the man crawled up and started to walk bended down, and walked down Maple avenue and walked over to Henry street; he still had his corn cob in his mouth and his whip in his right hand. He was moaning all the time. He took a little rest on the corner and then he was staring around, looking after his horses, and then he went somewhere further down," and that upon his attention being called to the fact that a man was lying on

the ground on Stone street and Henry street, he hastened over to identify him, and he stated "that it was the same man that he saw fall off the wagon, and that the deceased was lying face down on the ground, and that he was moaning something which I did not understand," and "that the deceased soon stopped breathing, moaning and moving." And "that the team of horses belonged to the Linden Contracting Company; and that the deceased was pronounced dead by the ambulance physician, who arrived within twenty minutes, and that two hours later the undertaker arrived and took charge of the body, and, upon cross-examination, he stated that he did not see any blood on the deceased."

12. Michael Budrecki testified that he was the undertaker that buried the deceased, and he took charge of the body at Morton's Morgue in Elizabeth about three or four o'clock in the afternoon of the same day, and that, while dressing the body for burial, he noticed a red bruise about one and one-half or two inches over the right forehead, and that there was a soft spot in the head or scalp upon the front portion, and that it felt like it was broke or something, and that "it was a break and swollen," and that his charges for burial were about $400.

13. Annie Kriel stated that she saw the deceased at seven thirty A. M. sitting on the corner of Henry and Stone streets, and asked him "what is the matter," and that he did not answer; that she stayed about five minutes and then walked away, returning later to learn that the man had died.

14. Ellen Lamont and Antonia Byer testified that on December 10th, 1923, a man died on Stone and Henry streets, Linden, New Jersey.

15. John M. Miller, a witness on behalf of the respondent, testified that he was a police officer of Linden, and found Michael Krutulis lying on the side of the road, and that when he arrived there there were a number of people there, that he felt of his pulse and found him dead, and that he saw no blood, that his hat was on; he testified to no direct evidence of the cause of death of the deceased, to contradict the testimony of the witnesses for the petitioner. The same

is true in reference to the testimony of Geza Mihalkovitz, who was employed by Morton's Morgue, and Joseph B. Gallagher, witnesses on behalf of the respondent.

Leave was granted to the perties at the close of case to serve interrogatories and cross-interrogatories on the question of dependent, and upon the return of the depositions of Antanina Krutulis, of Alytaus, Republic of Lithuania, under the hand and seal of the American consul, it disclosed that the widow was totally dependent upon her husband for support and maintenance, and that she had received during his lifetime on an average of one hundred and forty dollars ($140) a year, or about three dollars ($3) per week, and that her son's earnings were about one dollar per week, which clearly indicates that he was dependent upon the income of his mother.

In case of death, petitioner is entitled to compensation for the maximum period of three hundred (300) weeks, computed on a basis of thirty-five (35) per centum of the weekly earnings of twenty-four ($24) dollars, being eight dollars and forty ($8.40) cents, and being a total of twenty-five hundred and twenty ($2,520) dollars, and the sum of five dollars ($5) for stenographic service, and the sum of one hundred ($100) dollars for burial cost and the sum of twenty-three ($23) dollars cost of interrogatories.

That petitioner is entitled to an attorney's fee in the sum of five hundred ($500) dollars, to be paid to William N. Becker, attorney for petitioner, to be paid in the following manner:

Two hundred and fifty dollars ($250) by the respondent and two hundred and fifty dollars ($250) by the petitioner.

It is therefore, on this 24th day of February, 1926, ordered that judgment final be entered in favor of this petitioner, and that the respondent make payment to the petitioner as follows:

Permanent compensation at the rate of eight dollars and forty ($8.40) cents per week for three hundred (300) weeks, commencing from the date of the death of the deceased, from the 10th day of December, 1925, and the sum of five

dollars ($5) for cost of suit incurred in accordance with the law, and the sum of twenty-three dollars ($23) for cost of depositions, together with a counsel fee of two hundred and fifty dollars ($250), to be paid to William N. Becker, attorney for petitioner.

<div style="text-align:center">

CHARLES E. CORBIN,

*Deputy Commissioner.*